53 So.2d 401

**ANTLEY et al. v. SMITH et al.**

No. 40049.

May 28, 1951.

Harvey G. Fields, Farmerville, J. H. Dormon, Monroe, for defendants-appellants.

Liskow & Lewis, Lake Charles, for plaintiffs-appellees.

MOISE, Justice.

This is an action for the reformation of a title description, in which the plaintiffs pray for the correction of four instruments in their common chain of title, namely:

(1) An act of conventional mortgage, dated September 9, 1922, executed by T. J. Smith, in favor of any future holder of the notes secured thereby, recorded in Mortgage Book "U", Page 34, Records of Union Parish;

(2) Sheriff's Deed dated December 31, 1932, in the matter entitled "Ouachita National Bank v. Mrs. Celia H. Smith et al.", No. 9614, Third District Court, Parish of Union, being a foreclosure on the aforesaid mortgage against the widow and heirs of T. J. Smith, deceased, said deed being recorded in Conveyance Book 84, Page 34, Entry No. 41424, records of Union Parish;

(3) Act of sale from Ouachita National Bank in Monroe, adjudicatee under the aforesaid Sheriff's Sale, to Mrs. Katherine Littleton, nee Taylor, wife of J. R. Littleton, authentic in form before Ben R. Downing, Notary Public, Parish of Ouachita, dated June 12, 1939, registered in Conveyance Book 104, Page 89, Entry No. 54428, Records of Union Parish;

(4) Act of sale from Mrs. Katherine Littleton to Chester Hinton, authentic in form before D. W. Hicks, Notary Public, Parish of Union, dated October 20, 1942, registered in Conveyance Book 112, Page 151, Entry No. 60399, Records of Union Parish.

Chester Hinton conveyed a portion of the land he acquired to Arthur E. Antley, by authentic act before V. M. Digby, Deputy Clerk of Court and Ex-Officio Notary Public for the Parish of Union, dated March 6, 1945, recorded in Conveyance Book 118, Page 543, Entry No. 54855.

Plaintiffs sued Katherine and J. R. Littleton, Ouachita National Bank in Monroe, and G. M. Edwards as Sheriff of Union Parish, and the heirs of T. J. Smith, namely, Cal. W. Smith, Lela Smith Day, wife of Luther Day, Susie Smith Carter, wife of George Carter, Ava Smith Antley, wife of Ford Antley, Velma Smith Biggs, wife of Alton Biggs, Thomas A. Smith, and Sam A. Smith. By act under private signature, duly witnessed and acknowledged, dated February 21, 1950, and recorded in Conveyance Book 156, Page ——, Entry No. 85974, records of Union Parish, Katherine and J. R. Littleton executed a deed of correction in favour of Chester Hinton, with respect to the land originally conveyed by them to the latter; and in the same instrument Hinton corrected the description

of the property which he had conveyed to Antley. The Ouachita National Bank in Monroe filed an answer which admitted all the allegations of plaintiffs' petition and prayed for judgment in their favour. G. M. Edwards, Sheriff of Union Parish, filed a pro forma answer denying all allegations for lack of information. From a judgment in favour of the plaintiffs, only defendant Smith Heirs prosecute this appeal.

The record discloses that T. J. Smith acquired two contiguous parcels of land, one from John J. Hodge, on November 24, 1888, by deed registered in Deed Book 5, Page 23, records of Union Parish, described as, "Commencing 9 chains from corner No. 4 as per field notes issued relative to Special grant No. 37 to John Honeycutt notes issued Aug. 6th 1887 by Calhoun Fluker *Surgent* point compass 65° W7272. Thence along Said line Thirty one chains. Thence. 25° E. 72.72 Twenty Chains. Thence 65° E72'72" Thirty nine Chains to within one chain of main line and Thence by point of Compass that Shall point to place of beginning." the other from A. V. Hodge, on January 2, 1906, by deed registered in Conveyance Book 17, page 535, records of Union Parish, described as, "The West Half of Lot No. Four of the Honeycutt Grant in Section Ten Township Nineteen, North of Range Two East, containing 40 acres more or less."

On September 9, 1922, T. J. Smith executed in favor of "any future holder or holders of the hereinafter described five notes" a mortgage affecting the following described land (we have italicized the words inserted therein and placed in parentheses the words omitted therefrom in order to show the variance between the description contained in said mortgage, which is sought to be corrected in this proceeding, and the description as contained in the two deeds whereby Smith acquired his lands): "The W½ of Lot 4 of the Honeycutt Grant in Section 10, Twp. 19 N. (of) Range 2 East, containing 40 acres, more or less, also *a tract of 70 acres, more or less, described as commencing on the Southwest side of the said John Honeycutt Grant at a point 9* chains from corner No. 4 as per field notes (issued relative to) *of* Special Grant No. 37 to *said* (John) Honeycutt, (notes) issued Aug. 6th, 1887 by (Calhoun Fluker) Sur. General (point compass 65°W 72'72"). Thence running *North 65 degrees 72 min. 72 seconds west* (along said line) 31 chains; thence *North 25 degrees 72 min. 72 sec. East,* 20 chains; thence *South 65 degrees 72 minutes 72 seconds east 39 chains to* (within one chain of main line and Thence by point of Compass that Shall point to place of beginning) *a point one chain distance from the southeast line of the said Honeycutt Grant, thence Southwest to the place of beginning, all in Township 19 North, Range 2 East, containing in the aggregate 110 acres, more or less."* (The word "North" has been italicized by me.)

Plaintiffs now seek to have the legal description of the land as contained in the

aforementioned act of mortgage and the subsequent links in their common chain of title corrected to read as follows: "Commencing at a point on the line joining the Westernmost and Northernmost corners of Section Thirty-seven, Township Nineteen (19) North, Range Two (2) East, which point is North 34°5' East 1134.3 feet from the Westernmost corner of said Section, thence North 34°5' West 1469.7 feet, thence South 56°10' East 1500 feet [this is obviously a typographical error, since the map filed as Exhibit P–10, referred to infra, shows this distance to be 1580.0 feet, and all the courses and measurements following, as shown on said map, otherwise correspond to the proposed new description], thence North 67°48' West 251.6 feet, thence South 84°0' West 108 feet, thence South 51°16' West 276 feet, thence South 35°25' West 272 feet, thence South 25°45' West 615 feet, thence South 45°15' East 239 feet, thence South 55°5' East 1050 feet, thence South 28°0' [another typographical error, as the aforementioned map shows 28°25'] West 440 feet, thence South 35°0' West 860 feet to Section line, thence North 55°55' West along Section line to a point which is South 55°55' East 942.5 feet from the Westernmost corner of Section 37, thence North 1369.6 feet to point of beginning, containing 107.21 acres."

Pretermitting for the moment the legal defenses interposed by the Smith Heirs and considering only the facts developed by a study of the record and the map of the John Honeycutt Grant, Section 37, T 19 N, R 2 E, made by George F. Ballard, C. E., September, 1949, filed in evidence in behalf of plaintiffs, we find that (1) a search of the conveyance records of Union Parish discloses that the only property ever acquired by the late T. J. Smith was the land composed of the two adjoining tracts as described supra (Testimony of A. B. Edwards, Title Abstractor, TR. 186); (2) the Smith Place was the only land ever cultivated or claimed by T. J. Smith and his wife Celia (Testimony of Mitchell William Day, their grandson, TR. 198, and of Cal W. Smith, their son and a defendant herein, TR. 211); and (3) while there is no question as to the identity of the Smith Place, as acquired by T. J. Smith and possessed by him and his heirs, first as owners, then as lessees of Ouachita National Bank in Monroe, as owner, and as subsequently acquired and possessed by the Bank's vendees in the chain, nevertheless the description now sought to be corrected covered land which T. J. Smith never acquired, claimed or possessed (save for a small triangular portion as below shown), but which was the property of his adjoining neighbour, one Guice. As shown on the Ballard map, the result of the error (the insertion of the word "North" in the description as the first course thereof) is to create two overlapping trapeziums, the land as acquired being out-

lined in red (reproduced below by a broken line) and the land as mortgaged being out-

lined in blue (reproduced below by a dotted line):

39 chains

39 chains

20 chains

20 chains

31 chains      31 chains

The substance of the legal defenses to this action is that there is insufficient proof of mutual error on the part of T. J. Smith, the mortgagor, and that in any event the action to reform the description is prescribed by the prescription of 10 years liberandi causa.

On the question of intent, we think that the evidence preponderates that Smith intended to mortgage the land he had acquired from John J. Hodge in 1888 and from A. V. Hodge in 1906, which was in fact the only land he owned in Union Parish, and that he certainly did not intend to mortgage land which he did not own, but which in truth and fact belonged to his adjoining neighbour. To hold that there was not error on the part of the mortgagor, as well as on the part of the mortgagee, would be tantamount to imputing fraud to the former. Defendants would thus be in the anomalous, and legally untenable, position of relying upon the perpetration of fraud as a defense against the rights of the defrauded.

With regard to the question of prescription, the jurisprudence is settled that this type of action, being a personal on, prescribes in ten years, but ten years *from the date of discovery of the error.* Louisiana Oil Refining Corporation v. Gandy, 168 La. 37, 121 So. 183; Haas v. Opelousas Mercantile Co., 197 La. 500, 2 So. 2d 3. Further, this prescription does not run as long as possession of the land is exercised. The evidence shows that at no time has there been any break in the possession of the T. J. Smith Place, first by T. J. Smith as owner, then by his widow and heirs as lessees from the foreclosure adjudicatee, Ouachita National Bank in Monroe, and then by the Littletons, and finally plaintiffs. The survey prepared under the supervision of George F. Ballard, C. E., by Engineering Service, and offered in evidence only as a diagram of the original T. J. Smith acquisitions, bears the date September, 1949; as far as the record discloses, it is the only survey made of the T. J. Smith Place, (and we can logically infer that the discovery of the error in the title

description was made in connection with the blocking off of ownerships in the Honeycutt Grant for purposes of mineral development, which according to A. B. Edwards, Title Abstractor, was done in 1948 (TR. 184.) The suit was filed in February, 1950, and was therefore timely brought.

For the reasons assigned, the judgment of the District Court reforming the title description is amended to correct the typographical errors therein contained, to read as follows: "Commencing at a point on the line joining the Westernmost and Northernmost corners of Section Thirty-seven, Township Nineteen (19) North, Range Two (2) East, which point is North 34°5′ East 1134.3 feet from the Westernmost corner of said Section, thence North 34°5′ West 1469.7 feet, thence South 56°10′ East 1580 feet, thence North 67° 48′ West 251.6 feet, thence South 84°0′ West 108 feet, thence South 51° 16′ West 276 feet, thence South 35°25′ West 272 feet, thence South 25°45′ West 615 feet, thence South 45°15′ East 239 feet, thence South 55°5′ East 1050 feet, thence South 28°25′ West 440 feet, thence South 35°0′ West 860 feet to Section line, thence North 55°55′ West along Section line to a point which is South 55°55′ East 942.5 feet from the Westernmost corner of Section 37, thence North 1369.6 feet to point of beginning, containing 107.21 acres."

As thus amended the judgment is affirmed, appellants to pay all costs.