343 So.2d 329 (1977)
Jay H. PIPES, Plaintiff-Appellant,
v.
W. H. PIPES, Defendant-Appellee.
No. 13152.
Court of Appeal of Louisiana, Second Circuit.
February 14, 1977.
Rehearing Denied March 21, 1977.
Writ Refused May 26, 1977.
*330 Jones, Jones & Alexander by Jerry G. Jones and Glenn W. Alexander, Cameron, for plaintiffs-appellants, Mary W. Pipes, Mary Sue Peace and Jeanine P. Jones, Heirs at Law of Jay H. Pipes.
Goff, Goff & Levy by A. K. Goff, Jr., Ruston, for appellee.
Before BOLIN, HALL and MARVIN, JJ.
En Banc. Rehearing Denied March 21, 1977.
HALL, Judge.
This lawsuit involves a dispute between two brothers, plaintiff J. H. Pipes[1] and defendant W. H. Pipes, over the ownership of a 20 acre tract of land in Lincoln Parish. Plaintiff, claiming to be the owner of the 20 acre tract, sued defendant to have cancelled from the public records a 1960 oil and gas lease and a 1971 timber deed executed by defendant as being clouds on plaintiff's title and to recover money received by defendant as consideration for the lease and timber deed. Defendant answered and reconvened claiming ownership of the property by virtue of a 1937 deed from plaintiff, which described other property but which defendant seeks to reform to correctly describe the 20 acre tract in dispute. Alternatively, defendant claimed ownership by virtue of 30 years acquisitive prescription. Plaintiff denied the allegations of the reconventional demand and filed a plea of 10 year liberative prescription to the action for reformation.
The issues during trial and on appeal are:
(1) Is defendant's action to reform the 1937 deed barred by 10 year liberative prescription?
(2) If not, is defendant entitled to reformation of the description contained in the deed because of mutual mistake and error and thereby entitled to be recognized as owner of the property in dispute?
(3) Is defendant entitled to be recognized as owner of the property by reason of 30 years acquisitive prescription based on adverse possession?
The district court in a comprehensive well-written and expressed opinion resolved each of the issues in favor of defendant and recognized him as owner of the property. Plaintiff appealed. Being of the opinion that the district court correctly resolved each issue of fact and law for the reasons expressed by the district court, this court affirms the judgment.
Background Facts
The property in dispute is the S/2 of the NW/4 of the SE/4 of Section 17, T 18 N, R 2 W, Lincoln Parish, Louisiana, known as the Sandy Branch Twenty. It was originally part of a larger tract of land owned by the parents of the parties to this suit. After *331 the mother's death, the father and the several children partitioned the larger tract by instrument dated September 6, 1932. Plaintiff acquired the property in dispute on the same day by deed from one of his brothers. Also on the same day, plaintiff conveyed another 20 acre tract located in Section 26, known as the Long Bottom Twenty, to defendant.
Five years later in 1937, plaintiff executed a deed to defendant describing the same 20 acre tract in Section 26 (the Long Bottom property) which plaintiff had previously sold to the defendant in 1932. This deed contained a mineral reservation in favor of plaintiff.
The Sandy Branch property in dispute was assessed to the plaintiff in 1938 but thereafter was assessed to defendant who paid the taxes on the property from 1938 or 1939 to the time this suit was filed in 1975. Defendant exercised physical possession of the property from 1937 or 1938 by farming it, running cattle on it, maintaining fences, and having timber cut from the property on three occasions. He also executed the oil, gas and mineral lease mentioned above. Plaintiff personally exercised no possession and paid no taxes on the property after 1937 or 1938.
Basically, plaintiff claims title by virtue of the 1932 deed and no subsequent conveyance of the property in dispute. Defendant claims title by virtue of the 1937 deed from plaintiff, which defendant contends was intended to convey the property in dispute. Alternatively, defendant claims title by virtue of 30 years acquisitive prescription based on adverse possession.
Ten Year Liberative Prescription
Plaintiff-appellant contends defendant's action for reformation of the 1937 deed is barred by the 10 year liberative prescriptive period provided in LSA-C.C. Art. 3544. It is well established that an action for reformation of a deed, although incidentally affecting immovable property, is a personal action and is governed by the prescription provided in Article 3544. It is also well established in the jurisprudence that this prescription does not begin to run against the party having the right to seek reformation until the error or mistake is discovered by him or should have been discovered by the use of due diligence. Louisiana Oil Refining Corporation v. Gandy, 168 La. 37, 121 So. 183 (1929); Haas v. Opelousas Mercantile Co., 197 La. 500, 2 So.2d 3 (1941); Antley v. Smith, 219 La. 525, 53 So.2d 401 (1951); Agurs v. Holt, 232 La. 1026, 95 So.2d 644 (1957); Merritt v. Hays, 237 La. 557, 111 So.2d 771 (1959). It is equally well established that this prescription does not run as long as possession of the land is exercised by the party seeking reformation. Louisiana Oil Refining Corporation v. Gandy, supra; Antley v. Smith, supra; Sharpe v. Hayes, 171 So. 862 (La. App. 1st Cir. 1937).
In overruling the plea of liberative prescription, the trial court concluded that defendant did not learn of the alleged error in the 1937 deed until on or about the day before suit was filed in January, 1975. The trial court further concluded that none of the events which transpired after the deed was executed were sufficient to give notice to the defendant, who knew the property simply as the Sandy Branch property, that the description contained in the deed was erroneous.
In support of his contention that the defendant at least should have known of the error, plaintiff points to the fact that defendant had the deed recorded, the property was assessed to plaintiff in 1938 the year after the sale, and defendant had the deed read to him in the clerk's office about 5 years later in 1942. In Merritt v. Hays, supra, the court noted that the party claiming reformation in that case should have noticed the error in the description when he had the deed recorded, but in that case the deed was not recorded until many years after it was executed. The same reasoning would not apply in this case where the deed was drawn up by a deputy clerk in the clerk's office with both parties present and recorded the same day. The 1938 assessment in plaintiff's name was not significant since some time lag in changing the assessment *332 of the property could be expected and the sale was not made until the latter part of 1937. Defendant's testimony about his having the deed read to him at the clerk's office in 1942 is likewise of little significance, since the purpose of defendant's review of the deed at that time was in connection with the mineral reservation over which plaintiff and defendant had a running dispute, and did not concern the description of the property.
We find no error in the trial court's conclusion that defendant did not learn of the error until shortly before suit was filed and, therefore, prescription did not begin to run until that time. We likewise find no error in the trial court's conclusion that defendant was in possession of the property after execution of the 1937 deed and that prescription did not run for that reason as well.
Reformation of Deed
Plaintiff-appellant contends that the defendant failed to prove by strong and convincing evidence that both parties to the 1937 deed intended that the Sandy Branch property in dispute be conveyed and that the description of the Long Bottom property was a mutual error and mistake. Defendant, on the other hand, contends, and the trial judge so held, that defendant bore his heavy burden of proving mutual mistake and error and is entitled to reformation.
Reformation of instruments is an equitable remedy and lies only to correct mistakes or errors in written instruments when such instruments, as written, do not express the true contract of the parties. It is a personal action, even when applied to real estate, in which the burden is on the one seeking reformation to establish the mutual error or mistake by clear and convincing proof, parol evidence being admissible for this purpose. Evidence of mutual error must be strong and convincing. Merritt v. Hays, supra.
The trial court enumerated the following reasons for holding the defendant discharged his burden of proof:
(1) The deed contained a description which purported to convey a 20 acre tract that the vendor did not own but had sold some 5 years previously to the same vendee;
(2) A party must not be presumed to have intended to sell property which he did not own;
(3) Although plaintiff owned an undivided interest in other property in Lincoln Parish in 1937, the only 20 acre tract which he owned was the Sandy Branch property;
(4) Plaintiff paid no property taxes on the Sandy Branch property after 1937; and
(5) Plaintiff exercised no possession over the Sandy Branch property after 1937.
Plaintiff testified (his deposition was taken prior to his death and offered into evidence at the trial) that he did not remember in 1937, or at the time his deposition was taken, selling the Long Bottom property to defendant in 1932. He admitted, however, that the signature on the 1932 deed was his and that he must have sold it. His testimony was that it was the parties' intention that the Long Bottom property be conveyed by the 1937 deed. Defendant's testimony was that he had already purchased the Long Bottom property and it was the parties' intent in 1937 that the Sandy Branch property, the only 20 acre tract then owned by plaintiff, be conveyed. Defendant's testimony is supported and corroborated by the factors enumerated by the trial court.
The plaintiff-vendor cannot be presumed to have intended to sell land which he did not own and had previously sold to the same defendant-vendee. See Antley v. Smith, supra, and Haas v. Opelousas Mercantile Co., supra. It is unreasonable to assume that both parties in 1937 had forgotten about a sale made only 5 years earlier. The following statement from Haas is closely in point:
"There can be no doubt that there was a mutual error in describing part of the property as the S.E.¼ of the N.W.¼ because the defendants and their author in title did not own any land which would *333 fit the erroneous description but, on the contrary, owned the correctly described land which plaintiffs and their ancestor in title acquired and possessed."
Defendant proved by strong and convincing evidence that it was the parties' intent in 1937 to convey and purchase the Sandy Branch property in dispute. Defendant is entitled to have the deed reformed to reflect the correct description of that property. Defendant is further entitled to be recognized as the owner of the property by virtue of his acquisition thereof under the 1937 deed.
Thirty Year Acquisitive Prescription
In view of the holding that defendant is the owner of the property by title under the 1937 deed as reformed, it is unnecessary to consider defendant's alternative claim of ownership based on 30 years acquisitive prescription. The district court nevertheless considered and resolved that issue, holding that defendant proved his ownership by virtue of 30 years adverse possession. This court has also reviewed that issue and affirms the holding of the trial court.
Under LSA-C.C. Arts. 3499-3503, the ownership of immovables is prescribed for by 30 years without any need of title or possession in good faith. The possession must be continuous, uninterrupted, public, unequivocal and under the title of owner. When possession is commenced by corporeal possession of the property, it may be preserved by external and public signs announcing the possessor's intention to preserve possession of the property. Civil possession following corporeal possession is sufficient so long as there remains on the property any vestiges of works erected by the possessor. Acquisition extends only to that property which has been actually possessed by the person pleading acquisitive possession.
The property in dispute was partly farmland and pasture and partly timberland. The evidence, consisting of defendant's testimony corroborated by the testimony of several other witnesses, establishes that (1) defendant farmed part of the property at least on an intermittent basis from 1938 to 1961; (2) defendant grazed cattle on the property and rented the property for cattle grazing purposes during the period 1938 to 1961; (3) defendant and his sons repaired and maintained fences on the south boundary and near the west boundary of the property beginning in 1938 or 1939 (defendant owned the land north and east of the Sandy Branch property which was used and maintained along with his other land); (4) the entire tract owned by defendant including the Sandy Branch property was surveyed in the 1950's and markers placed at the property corners; (5) a new wire fence was constructed on the western border of the property in 1961; (6) defendant paid taxes on the property from 1938 to the time suit was filed; (7) defendant made timber sales in 1948, 1958 and 1971 (the timber buyers testified they cut over the entire tract in 1948 and 1958); and (8) the property was leased for oil and gas purposes in 1959.
Appellant argues that any possession defendant originally exercised ceased in 1961 when he stopped farming and grazing cattle. The evidence is, however, that defendant's possession continued after that time by maintenance of fences, a timber sale, the execution of a lease and payment of taxes.
Appellant argues that defendant's possession did not extend to the western boundary of the property because the old fence on the west side of the property ran along an old road which traversed the property inside of the actual boundary line. The evidence is that defendant exercised possession over the entire 20 acre tract and the location of the west fence some distance inside the boundary along an old road is not significant. Even in the years before the new fence was built along the exact western boundary, there was a well known marked pine witness tree visibly marking the southwest corner of the property.
Appellant urges that defendant's possession was with the permission of plaintiff and, therefore, was not adverse. The evidence is to the contrary.
*334 The trial court's conclusion was that defendant used the Sandy Branch property for farming, pasture and timber operations beginning in 1938, which was in accordance with the nature of the land and constituted corporeal possession of the property. The trial court concluded the boundaries of the property were marked with sufficient certainty either naturally or artificially to give definite notice to the public of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the limits thereof. The trial court held defendant's possession was continuous, uninterrupted, public and unequivocal. The record supports the trial court's conclusions.
Even if defendant had failed to prove ownership by title, he has proved ownership by virtue of 30 years acquisitive prescription.
Decree
For the reasons assigned in this opinion and in that of the district court, the judgment of the district court is affirmed.
Affirmed.
NOTES
[1] The original plaintiff died during the pendency of his suit and his heirs were substituted as plaintiffs. The original plaintiff and the substituted plaintiffs are referred to as the singular "plaintiff" or "appellant" throughout this opinion.