ELLIS, Judge.
This case is before us on appeal from a judgment of the lower court dismissing plaintiffs’ suit. There is no real dispute as to the facts, except as to the duration of *109 the inconvenience complained of. We adopt the facts as stated by the trial judge in his written reasons for judgment, as follows:
“This is a suit for damages by various owners of camp sites along the Amite River in Ascension Parish against United ■Gas Pipeline Co. and its contractor, Panama, Inc. The plaintiffs allege that as a result ■of certain work performed by defendants they were unlawfully deprived of a right of ingress and egress to their properties during the months of June through December, 1961.
“The record indicates that United is the owner of a right-of-way instrument granted ■on January 27, 1951, by the then owner of the property in question authorizing it to •construct, operate, and maintain multiple pipe lines and appurtenances. In connection with a joint project undertaken by the Police Jury of Ascension Parish, the Department ■of Public Works of the State of Louisiana, .and the United States Corp of Engineers to widen the Amite River, United was required to relocate its pipe lines and accordingly, •contracted with Panama, Inc., to perform the work.
“The shell road in existence at the time ■the work was commenced was located too close to the old river bank and had to be •cut out and replaced in connection with the widening of the river and the relocation •of the pipe lines. The defendants’ project ■engineer testified that the work began on June 23,1961, and was completed on October .20, 1961. In the interval the defendants provided a board road of the type normally ■used in oil fields and which was designed to support heavy equipment However, it is rmdisputed that during the time the work was in progress frequent heavy rains made the board road impassable to traffic, and that the plaintiffs were unable to reach their respective properties on some occasions oth- • er than by requesting the permission of adjoining landowners to traverse their properties. On the other hand defendants point -out that even without the work undertaken iby them the previously existing shell road would likewise have been impassable since during the heavy rains it too was flooded.
“After examining the testimony in the record the court makes the following findings of fact:
“1. United was the owner of a right-of-way grant obtained from a prior landowner which authorizes it to construct, operate and maintain the lines in question.
“2. United was required by governmental directives which it could not refuse to obey to undertake the work in question.
“3. All work was performed in accordance with law and normal pipe line practices and was completed as rapidly as weather conditions permitted.
“4. The project of widening the Amite River which necessitated the work in question was a public improvement undertaken primarily for the benefit of the plaintiffs and other landowners similarly situated, and could not be effected without some temporary inconvenience to them.
“5. The plaintiffs have failed to show with any degree of certainty that access to their property was made any more difficult by the work in question then it had been in previous years when the existing shell road was rendered impassable by flooding.
“6. At most the plaintiffs suffered only inconvenience in reaching their properties and were not completely cut off from them, and such inconvenience was both temporary in nature and a necessary incident to the permanent improvement which inured to their benefit.”
Plaintiffs argue that the facts require an application of the doctrine of sic utere tuo ut alienum non laedas under Article 667 of the LSA-Civil Code. In support, plaintiffs rely on Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845; Devoke v. Yazoo & M. V. R. Co., 211 La. 729, 30 So.2d 816; and Gotreaux v. Gary, 232 La. 373, 94 So.2d 293.
The Fontenot case involved cracking damage to the plaintiffs’ homes occasioned by *110 blasting in connection with oil and gas exploration. The court applied the doctrine of absolute liability and gave judgment- for the plaintiffs even though the defendant was engaged in a lawful business conducted according to the best available methods.
The Devoke case was brought by several plaintiffs, all residents of the area near defendant’s railroad terminal facility in Bossier. City, Louisiana. The plaintiffs complained of obnoxious smoke, cinders, and soot. The court gave judgment for the plaintiffs, again applying the doctrine of strict liability, finding that the manner of operation constituted a nuisance.
The third case, Gotreaux v. Gary applied the doctrine of absolute liability for the destruction of plaintiff’s crops occasioned by the defendant’s use of a herbicide sprayed by air over defendant’s property. The injury to the plaintiff was occasioned by the drifting or blowing of the herbicide onto his crops.
The defendant, in the instant case, as well as the trial court in reaching its decision, relied on the cases of Hill v. Chicago, St. L. & N. O. R. Co., 39 La.Ann. 599, and Dupont v. Thibodo, La.App., 5 So.2d 383.
In the Dupont case, the plaintiff landowner operated a small vegetable business fronting on the highway. During the course of construction of a sewerage line for Jefferson Sewerage District No. 1, the defendant contractor cut off the plaintiff’s access, and that of his customers, for a period of twenty-four days by leaving dirt piled along a trench in front of plaintiff’s business. The court at page 385 of 5 So.2d used the following language; and denied recovery:
“In any event, the inconvenience and loss which plaintiff suffered was necessarily incident to the execution of defendant’s contract with the Sewerage District for the installation of sewerage pipe, a public improvement which could not be effected without inconvenience to adj acent property holders and since we find no negligence on the contractor’s part, the damage which plaintiff sufferer is damnum absque injuria.”
• The plaintiff in the Hill case owned certain property along St. Joseph Street in New Orleans. The defendant railroad operated a train along that street. The suit was filed seeking an injunction and damages on the ground that the defendant railroad was without authority to operate on this particular street. After a lengthy consideration of the statutes and ordinances affecting the defendant’s right to operate, the court concluded that the defendant was in fact authorized by law to operate a railroad along St. Joseph Street and held that the defendant could not be held liable for merely doing a “lawful act in a lawful manner.”
It is not clear from the decision in the Hill case whether the court considered the railroad as a quasi-public enterprise, and, therefore, entitled to the benefit of the well established rule of law that some degree of inconvenience must be suffered and endured by property owners for the benefit of the general public; or whether the court considered the railroad as a private enterprise and held that under the law, a property owner could not recover against another property owner for damages, absent a showing of negligence. In either case, however, the rule of law announced in the Dupont case is controlling as to the case at bar.
If the court in the Hill case believed the railroad was a public or governmental activity, then the decision would support the decision reached in Dupont v. Thibodo. If, on the other hand, the court considered the railroad as a private undertaking or business and denied recovery on the ground that no negligence was shown, it is clear from the cases relied on by the plaintiff, (Fontenot v. Magnolia Petroleum Co., Devoke v. Yazoo & M. V. R. Co., and Gotreaux v. Gary) that this is no longer the law. It is probable that the court in Hill v. Chicago, St. L. & N. O. R. Co. did not reach any conclusion in this respect, as the sole ground on which the plaintiff sought recovery was the alleged *111 lack of authority of the railroad to operate on St. Joseph Street.
The law as we view it is that where a small injury or temporary inconvenience is suffered by a land owner in connection with work being performed by a government agency or unit, either directly by the government or indirectly through its agent, the injury is damnum absque injuria, without a showing of actual negligence. If, however, the same injury is caused, not by the government, but by an individual acting on his own behalf, directly or through his agent, the injury sustained will be compensable and this without any showing of negligence.
The reason for this distinction is that in the case of government activity, the private landowner is required to endure some injury and inconvenience for the benefit of the public. He is not, however, bound to endure this from his neighbor. Certain common benefits will be derived by the public in general as a result of the public improvements giving rise to the inconvenience. In the case of private undertakings, however, the law does not view a neighbor’s improvements as enuring to the benefit of anyone but the landowner who undertakes the work. Thus, the doctrine of absolute liability is applicable, and a landowner is prevented from using his property so as to injure his neighbor.
It is necesssary in this case to determine whether or not the defendants were engaged in a private activity in the furtherance of their business or were engaged in a governmental activity. We believe the facts in this case established that the lowering of the gas transmission lines under the Amite River was incident to and a necessary part of the public undertaking by the state, parish and federal governments to widen and deepen the Amite River at certain points in an effort to control flooding. This is government activity with a public purpose, beneficial to the public in general and to the plaintiffs in particular, as their land is the land flooded in seasons of heavy rainfall. Therefore, even though the work was not performed directly by the government or its agents, it was required to be performed for the government. It cannot be said that the defendants were conducting their own private businesses. Had they not complied with the government order to lower the lines, court action would certainly have followed.
Accordingly, the injuries suffered by the plaintiffs are damnum absque injuria, having been caused and necessitated by a governmental activity and being of a minor and temporary nature. The fact that the inconvenience was prolonged by the unusually high rainfall cannot, of course, be attributed to the defendants. Without a showing of actual negligence on the part of the defendants, there can be no recovery for mere inconvenience. The record before us is barren of any evidence of negligence.
The judgment of the lower court is, at plaintiff’s costs, affirmed.
Affirmed.